20-4027, SS&C v. Consultores, etc. Mr. Thomas, are you ready to proceed? Thank you, your honors. Good morning. May it please the court, Nathan Thomas on behalf of SS&C Technologies. SS&C Technologies appeals the district court's order dismissing its complaint on the basis of a forum selection clause. It's well established that the proper means by which to enforce a contractual forum selection clause is through the doctrine of forum nonconvenience. Here, having determined that the forum selection clause in the party's agreement was enforceable, the district court applied a modified forum nonconvenience analysis that gave almost dispositive weight to the forum selection provision. SS&C submits, however, that the district court erred in its determination that the applicable clause is enforceable under the laws of Mexico and as a result further erred in its abrogation of the forum nonconvenience analysis. I would like to focus today on the first part of this, the court's threshold error, its conclusion that the forum selection clause is enforceable under the laws of Mexico, and to the extent time permits, just briefly address how this erroneous conclusion resulted in a misapplication of the law of forum nonconvenience. In framing the issues before the court, I think it's first important to note what is not in dispute between the parties. It is not disputed that the party's relationship is governed by a contract that is to be interpreted, construed, and governed by the laws of Mexico. It's also not disputed that the contract also provides that any action, suit, or proceeding related to any dispute or controversy arising out of the contract was to be, quote, brought in the state and federal courts of Mexico. Ultimately, the parties also do not dispute that this provision, as written, is unenforceable under the binding statutes and my mandatory binding precedent of the laws of Mexico. Well, I think your opponents are going to say that there's not agreement on that one. I believe they probably will, Your Honor. That being said, the decision made below was not made based on the laws of Mexico. It was based upon a single decision that was adopted by two courts in Mexico in litigation between these parties. Let me ask you this. What if you had the very same except the decision from the other court was a case from New Mexico rather than old Mexico? What would you say to the decision of the New Mexico court, which was wrong, but was their decision? Would you say the same thing, just ignore it? I would say, Your Honor, that I think this is answered by looking at Rule 44.1, which does exactly what you're saying, Your Honor. When it was passed, the intent, as articulated in animal science, was to make the determination of foreign law the same as the court would determine domestic law. In that case, specifically referred to, I believe, that if the law of the highest court of the land is the one that you were to follow, then that is what you were to follow, and you would make the same determination. Thus, if it was a court in New Mexico making a determination rather than old Mexico, you would look at that within the hierarchy of binding precedent within the domestic system. If it was a court that is a superior court and it has binding authority, then you would have to adopt that decision, but that's not what we have here. But it's a final decision, in this case, in a different jurisdiction. It just so happens to be a foreign jurisdiction rather than another state of this union. It seems to me that if you can disregard the decision of the Mexico courts in this case, you can ignore the final decisions in the same case from the state of New Mexico. In that respect, Your Honor, this is not the same case. It was a different issue that was being addressed. In that case, SS&C was the defendant and had challenged whether it was subject to jurisdiction as a defendant in the courts of Mexico, and it initially prevailed on the basis of the binding authority. I'm sorry, Your Honor, this is the same argument that you're making now, which was that because they didn't name the specific judge, that therefore it was invalid and couldn't be enforced. That argument was soundly rejected and the provision was upheld. I mean, that's pretty darn close. I mean, I understand, Your Honor, and I understand where you're coming from on that. Ultimately, that would be almost a res judicata argument, a collateral estoppel or an issue preclusion argument, but that's not what the district court did. And it's not. I wouldn't argue that it's collateral estoppel or issue preclusion. I would argue, like Judge Murphy does, that we're looking at it essentially like we would if we were sitting in diversity under ERIE. And that we can't ignore the decision of two Mexican courts that have rejected the very argument you're making here between the same two parties over the exact same provision in the same contract. I understand that, and I don't think it should be ignored. Rule 44.1 makes very, foreign law is free to consider anything submitted by the parties or that it determines on its own is pertinent to the determination of the law. Ultimately, that determination of the law should be a determination of the law, not of a particular decision. Adopting these decisions as the law of Mexico is set forth in the declaration. They are the law of Mexico. We have a Mexican court that has interpreted the very article of Mexico law that you're relying on and saying it doesn't invalidate this provision. How isn't that a decision of law from Mexico? Well, the ley de amparo in the Mexican system provides that judicial decisions only have binding authority if the same conclusion is reached by five different courts in five different sessions unanimously without interruption. That's what makes that law binding. And this is an aberration from that binding precedent. And in that respect, to the extent we look at what is the binding law of Mexico, this is not it on any other litigant or in fact upon us except in that particular case. And underlying everything here is you got homework, right? Well, ultimately, your honor, that matter has now been resolved in favor of SS&C as I understand it. You got homework in Mexico, correct? SS&C never did want to litigate in Mexico. The ultimate result in that case has been positive. Why did they sign this agreement that had it in there? That's what I'm getting to is that you're complaining about being a homework and you took that risk. Your client took that risk when they signed this agreement. So I understand, your honor, and I cannot argue that they didn't sign that agreement or that the language is anything but what it is. The argument that we've made is the one that under the commercial code and under the binding precedent, mandatory precedent, that is an unenforceable provision. Yes, the court reached a different conclusion in the Mexico litigation, but it remains that that is contrary to the binding authority in Mexico. In the binding authority that you rely on, there's not a single one of those decisions that involved citizen not of Mexico. They were decisions between two parties in Mexico suing each other, right? I believe that's the case. Well, I can see why a court might view it a little differently under these circumstances and look at the obvious intent of the parties that your client would subject itself to suit in Mexico. What the court was thinking and what the basis for its determination, the federal court of appeals that ultimately found that there had been a waiver of jurisdiction and what its motivation for doing that is a bit unclear as it did not cite any binding authority. What we are left with is what the commerce code says and what the binding authority says. I don't believe there's a distinction that's been articulated by either of the experts whose testimony was proper to say that there was an exception to a non-domesticated party. I think also, Judge McHugh, what you raise is an interesting point and that the question there I do think is distinct and that it's not unheard of for a party to be required to sit in a, as a defendant in a particular jurisdiction, but at the same time that does not necessarily require all lawsuits be brought in that jurisdiction. A Utah resident may be subject to suit in California, but it is not obligated to bring all of its suits in California, even within between the same parties. And in that respect, it is a slightly different question that was being answered here and one that doesn't preclude this case from going forward. Ultimately, we believe that under 44.1, the district court had an obligation to apply the law. Oh, I'm sorry. I did not hear you, Judge. No, I was muted. I had to turn on mute when the phone started ringing again. So, here's my concern here. We are not bound by those decisions. We're trying to decide what Mexican law is. We have decisions by those Mexican courts. You're saying those decisions are wrong, but you really don't give us a lot to work with. We have to take your word that those are contrary to Mexican decisions. And if your brief had gone through the Mexican statute and explained things and shown all the cases that have rejected form selection clauses like this, then maybe we could help you. But I don't see how I've got anything to work with to rule in your favor except to say, you're a nice looking smart guy, so I guess you're probably right. I would take that if that gets the result we're looking for. I would refer the court to the declaration of Ramon Fernandez-Vigil that is in the appendix of page 924. This is your counsel? Your Mexican lead counsel from the Mexico litigation? That's probably not your best choice of an expert. It says what you want him to say, pretty much, but it doesn't explain it. It doesn't explain it. Again, it's too conclusory. Go ahead. Well, the precedent was also attached, and I would note that on reply below, this was not really a point that was disputed. The consultor, Pueblo Benito, relied upon these decisions and the case between them in that litigation without rebutting the testimony of Mr. Vigil, and without rebutting the proposition that these were binding authority under the system created by the laid-down parole. In that respect... Go ahead. It seems to me that when you have a conclusory statement and you respond by giving two court decisions to the contrary, that's pretty good rebuttal, but proceed. Well, I would just respond to that by saying there are two decisions that are not binding on anybody other than the parties to that litigation in that litigation, whereas the Commerce Code applies... Counsel, your opposition had full opportunity to put in a counter-affidavit and chose not to do so, right? That's what I'm saying. Well, on reply, they could have responded to that. We were opposing the motion and they would have had an opportunity to reply to that, and they did not. So, the only thing we have as to opining on what the Mexican faith court did is your expert, correct? They did offer the testimony of their lawyer in Mexico as to the proceedings below in their moving papers, but he did not respond to the testimony from the lawyer that we submit, Mr. Vigil. I would submit, Your Honors, that Rule 44-1 requires that the court apply the law, the laws of Mexico in this case, to determine if the foreign selection clause is enforceable. And under the law, under the Commerce Code and the precedent, the mandatory and binding precedent that flows from that, the law of Mexico does not render this provision enforceable. And as a result, the district court's decision to abrogate or apply the modified form of nonconvenience analysis and give great weight to that foreign selection clause was erroneous. And on that, Your Honors, I would submit. Let me ask you one question. It doesn't appear that you present any alternative arguments that the district court abused its discretion when considering the public interest factors. So, if we disagreed with you and said the modified version is appropriate, you haven't raised any argument to the application of that. That's how I read your book. To be very frank, Your Honor, I think the Atlantic will be given great weight and his determination on the public factors we don't take particular issue with. We do take issue with the non-consideration of the private factors. Thank you. Mr. Merriman. Thank you, Your Honor. May it please the court, Ryan Merriman appearing on behalf of Consultores Pueblo Bonito. This case, as you're well aware, involves two sophisticated commercial entities that engage in international business transaction, access to counsel, plenty of resources, and they entered into a contract that has what appears to be a fairly unambiguous foreign selection clause that we've all read several times in reviewing these briefs. The concluding sentence in that clause is that the party's here to submit to the exclusive jurisdiction of such courts, the courts in Mexico. We have parallel lawsuits filed. And as the court is aware, SS&C Technologies tried to dismiss the complaint in Mexico, raising arguments that I don't see any difference from what have been raised in the briefing and today. The core argument was that under the civil code, section 1093, that in order for there to be a waiver of jurisdiction, they had to specify the specific Mexican state or court or even the judge. Otherwise, it wasn't enforceable. It wasn't clear and specific. And the courts rejected that argument decisively. We have to interpret this provision under Mexican law to decide if this suit should be governed by those authorities to decide what Mexican law is. And of course, under Federal Assault Procedure 44.1, this court can consider any relevant material or source to determine foreign law. And so I think the analogy that Judge Murphy raised is a useful one because 44.1 is supposed to make the determination of foreign law as close as possible to how you would determine law in New Mexico or Pennsylvania, any other jurisdiction. And so what would we do if you're sitting in diversity jurisdiction, you're trying to figure out what the law in New Mexico is? I think a good analogy would be what you had an unpublished appellate court decision from Mexico, from New Mexico on the very same two parties in a case that was later brought in federal court. And the party in federal court was saying this unpublished decision is wrong based on these published decisions. They're probably out of luck. I mean, they're probably a Rooker-Feldman issue, I would imagine. But a lot of the cases that have been cited, particularly in the reply brief, this United States Supreme Court case, the Vitaman case, those are all cases that don't involve facts like this, where you actually have parties that were litigating in the foreign forum that come back to United States jurisdiction and try and say, hey, this decision back here, it's just wrong, they just whiffed on the law. Those cases all involve statements by foreign government officials, administrative agencies, dueling experts that are citing precedent from other cases that seem to be similar. And in that respect, I don't think there's really a lot more that this court has to do than look at what the Mexican courts held and apply that law. Those decisions are a reflection of Mexican law. Let me interrupt for a minute. I mean, if we look at Article 1093, which, frankly, I didn't see a word-for-word translation of it in your materials, but there is one on Cornell University Library's webpage, so that was helpful. But it says that there's an express submission when those interests clearly and definitively renounce the one whom the law concedes them and designate with absolute precision the judge to whom they submit. I mean, that does sound like, in order to comply and make the clause enforceable as a matter of black-letter law, you've got to name the judge with precision. Can't we? We don't have a decision from the highest court in Mexico. I mean, can't we look at that language and say these decisions are just wrong? Well, you know, you look at any material, any relevant source, right? So certainly, we should look at the plain language of that statute. And I would just point out that the courts in Mexico were looking at that statute, and their reasoning was it complies with that statute because by excluding United States judges and designating exclusive jurisdiction in Mexico, it was in effect designating judges in Mexico, and that sufficed. I think the precise language from the federal circuit court in Mexico is that we don't need the sacramental phrase that they're waiving jurisdiction in the United States and designating a specific judge in Mexico. And it's not as if these decisions are just rogue decisions. If you look at the decisions that have been provided in two different places in the record, one place is 224, volume 1, 224 through 34, they are citing precedent from other courts in Mexico that reached similar conclusions in similar circumstances. Now, counsel's correct that those decisions have not yet reached this mandatory kind of super precedent status because they've been repeated by five courts as the law requires, but they're not making it up as they go along. They have a basis for their decision, and they're interpreting the same language we have here, the same claims under the same civil code, and making that determination. So it's hard to conceive of more persuasive evidence of what Mexican law is than decisions from two Mexican courts interpreting our very contract with the civil code and making a decision as between these two parties on what Mexican law requires. On this argument that the issues are distinct, that the issue in the Mexican court system is different from the issue that's being presented here, I think the discussion, I think, kind of flushed that out, so I won't belabor the point. But it is true that, of course, this case involves claims brought by SS&C against my client, and in Mexico, it was the reverse. Consultorios Pueblo Bonito was suing SS&C in Mexico. But the substantive issue that was decided is, of course, the same. It was, is this forum selection clause enforceable under the civil code? Is it specific enough? Is the waiver clear enough? Does it pass muster? And on that substantive issue, the courts in Mexico held that it is. And so I think the real problem with that argument is, if you look at the language of the forum selection clause, it applies to any action, suit, or proceeding related to any dispute, claim, or controversy that arises from this agreement. So if there was going to be a holding that, well, yeah, you could bring, my client could bring claims in Mexico, but his client can bring claims in Utah, there's no way to read that provision that would allow that. If it's enforceable and it applies, then all litigation has to take place in Mexico. I really don't, unless the court has further questions for me, I'm happy to submit. Are you telling us that we should not be troubled in any way by the contradictory conclusions in the declarations? Shouldn't bother us one whit Is that your position? Between the declarations of the dueling experts below? Yes, let me look. The declarations are pretty clear, I think. So we have two experts. Our expert was my client's counsel in Mexico. SS&C's expert was its attorney in Mexico. And they're advocating on behalf of their clients and they reached diametrically opposed conclusions. If you're trying to figure out what Mexican law is, looking at evidence submitted by counsel that has a dog in the fight, versus decisions from independent courts that are looking at it and applying Mexican law, it seems that's much more persuasive authority of what Mexican law is than an attorney who's client. So no, I don't think we should be troubled that the experts disagreed with each other. Experts always disagree with each other. But the benefit in this case is that we have independent courts that are telling us what Mexican law is in this very same dispute on this very same question. Does the court have any other questions for me? Thank you, counsel. I don't recall if Mr. Thomas used up all his time or not. Does anyone recall? He is out of time, judge. You have to give us 38 seconds back, actually. So very good. Thank you, counsel. Case is submitted. Counselor excused.